Robert GRAHAM, Jay C. Battershell, Gene Battershell, Christine Battershell, and Theatres of America, Inc.

v.

John L. HILL, Gerald C. Carruth, Philip K. Maxwell and Tom Curtis.

Civ. A. No. A–77–CA–188.

United States District Court, W. D. Texas, Austin Division.

Jan. 30, 1978.

Roger Jon Diamond, Hecht, Diamond & Greenfield, Pacific Palisades, Cal., Charles R. Burton, Minton, Burton & Fitzgerald, Austin, Tex., for plaintiffs.

Tom A. Curtis, Dist. Atty., Amarillo, Tex., David Kendall, First Asst. Atty. Gen., and Gerald C. Carruth, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

This is a suit by the owner and manager of a movie theater and bookstore in Amarillo, Texas, against various local and state officials, involving claims for injunctive relief, declaratory relief, and damages pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201. Jurisdiction in this Court is founded on 28 U.S.C. § 1343. The only matter presently before the Court is Plaintiff Jay Battershell's Motion for Summary Judgment seeking a declaratory judgment that Texas Penal Code § 43.25 [1] is overbroad and unconstitutional on its face. It is the Court's opinion that there are no material factual disputes relative to this motion, and that the only contested matters at this stage concern questions of law. After careful consideration of the legal issues presented, the Court is of the opinion, for the reasons hereinafter set forth, that Plaintiff's motion is meritorious, and that summary judgment should be granted.

### Background

Jay Battershell is the owner of a combination motion picture theater and bookstore known as the Mini-Vue Theater in Amarillo, Potter County, Texas. Prior to October, 1976, the Theater was owned and operated by Theaters of America, Inc., a New Mexico corporation of which Jay Battershell was the president. Since that time, Battershell has operated his business as a sole proprietorship. The Mini-Vue Theater manager at all times pertinent hereto has been Robert Graham. On August 26, 1977, the Grand Jury of Potter County returned an indictment against Graham, alleging that Graham had violated Texas Penal Code § 43.-25.[2]

The criminal action against Graham is currently pending before the 47th Judicial District Court of Potter County, in Cause No. 18,125–A on that Court's docket. Tom Curtis, the District Attorney for Potter County and the Defendant in this federal suit against whom declaratory relief is sought, is primarily responsible for the prosecution of the criminal case. Jay Battershell was not made a defendant in the criminal action against Graham, and no criminal charges under § 43.25 are currently pending against Battershell.

On September 29, 1977, the present suit was filed by Battershell, Graham, and The-

---

1. For the text of the statute, see infra, "Constitutionality of § 43.25."

2. The indictment alleges that Graham did "knowingly and intentionally sell and possess for sale a motion picture, knowing the content of the motion picture. Said motion picture showing a person younger than seventeen years of age engaging in sexual conduct . . ."

aters of America, Inc., seeking a variety of relief.[3] Plaintiffs alleged, *inter alia*, that the criminal prosecution of Graham was instituted and was being maintained by Tom Curtis in bad faith, and Plaintiffs requested an injunction against the ongoing prosecution of Graham. Plaintiffs have since conceded that such relief clearly is precluded by the federal abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, and Robert Graham has withdrawn his request for injunctive and declaratory relief. Plaintiff Battershell, however, has continued to pursue his request for a declaratory judgment on the constitutionality of § 43.25. For the purposes of his summary judgment motion, Battershell is willing to stipulate that Curtis has not acted in bad faith in the prosecution of Graham.

The criminal trial of Graham in the 47th Judicial District Court originally was set for Monday, January 9, 1978. However, on January 6, the date set for argument in state court on Graham's motion to quash the indictment, District Attorney Curtis and counsel for Graham agreed to request the state court to defer to this Court with regard to a ruling on the constitutionality of § 43.25, and the state court acquiesced in the postponement of the trial pending a ruling by this Court on Battershell's Motion for Summary Judgment.

With that background, the Court now proceeds to consider the legal issues raised by Plaintiff's motion.

### Standing

■ Although Battershell's Motion for Summary Judgment seeks only declaratory relief, this Court cannot, of course, exercise jurisdiction unless there is presented an actual live "case or controversy" for adjudication. 28 U.S.C. § 2201; *Golden v. Zwickler,*

394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). The basic requirement that there be adverse parties with adverse legal interests is no less strict in a declaratory judgment proceeding than in any suit where other relief is sought. *See* 6A Moore's Federal Practice ¶ 57.15.

■ Defendant Curtis initially contested the standing of Jay Battershell to challenge the constitutionality of Texas Penal Code § 43.25. Curtis asserted that Plaintiff has failed to show an immediate threat of prosecution under § 43.25, and that therefore no live case or controversy is presented. However, by agreeing on January 6 of this year to postpone the criminal trial of Robert Graham until this Court has ruled on the statute's constitutionality, Defendant apparently has retreated somewhat from his objection to Battershell's standing. An agreement by the parties to litigate a question in federal court cannot of itself confer jurisdiction or create a case or controversy where one does not otherwise exist, but the parties' desire to have an authoritative constitutional determination in the federal forum mitigates against the strictest interpretation of the standing requirements. *See Craig v. Boren,* 429 U.S. 190, 193, 97 S.Ct. 451, 454, 50 L.Ed.2d 397, 404 (1977).

■ Furthermore, apart from any agreement among the parties, the Court believes that Plaintiff Battershell clearly has standing to challenge § 43.25 on overbreadth grounds. The courts consistently have recognized an individual's standing to attack an allegedly overbroad statute which inhibits or chills conduct protected by the First Amendment, without regard to whether the Plaintiff's own conduct could be regulated or prohibited by a more narrowly drawn statute. *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Dombrowski v. Pfister,* 380 U.S.

---

**3.** At the time this suit was filed, the Mini-Vue Theater had been completely shut down and the property and assets of the Theater had been seized by a receiver appointed by a state district court in Austin. The receiver was appointed at an ex parte hearing in a suit filed by the State of Texas against Theaters of America,

Inc., purportedly to collect delinquent corporate franchise taxes. Finding that the receivership was instituted by state officials in bad faith, this Court enjoined the receiver from closing Plaintiffs' Theater. *See* this Court's orders of September 30, 1977, and October 28, 1977.

479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

Still, in order to establish standing, a Plaintiff must present more than just allegations of a "subjective chill", and must present a claim of specific present objective harm or a threat of specific future harm from the prohibitions of the statute under attack. *Bigelow v. Virginia, supra,* 421 U.S. at 816–17, 95 S.Ct. 2222. Defendant claims that this element does not exist as to Jay Battershell because the Potter County District Attorney's office has not made a specific threat to prosecute Battershell. Tom Curtis has filed affidavits by his assistant district attorneys to the effect that they are not currently contemplating prosecution of Battershell for violation of § 43.25. Nonetheless, the Court is convinced that the requisite harm to Battershell is present here. Battershell is the owner of the Mini-Vue Theater and bookstore, as well as the owner of the real property on which it is located. The showing of motion pictures at his theater, even if for commercial purposes, clearly is protected by the First Amendment absent an adjudication that the material exhibited or sold there is obscene. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); *Jenkins v. Georgia,* 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974). While the local District Attorney's office may not literally have uttered a "threat" to prosecute Battershell, it can hardly be contended that the indictment of his theater manager does not inhibit and threaten the exercise of Battershell's First Amendment rights as well as disrupt the operation of his business. Section 43.25 is aimed directly at those persons like Battershell who engage in the commercial sale and exhibition of motion pictures, and to the extent that the statute may overbroadly impinge on protected expression, he is obliged either to restrict his theater's movie offerings or to risk prosecution for exhibiting motion pictures made illegal by an unconstitutional statute. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 217, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); compare the situation of the vendor of beer in *Craig v. Boren, supra,* 429 U.S. at 194, 97 S.Ct. at 455, 50 L.Ed.2d at 405.

Under the circumstances, the Court is of the opinion that Plaintiff Battershell demonstrates the requisite threat of harm to establish a live case or controversy, and that he has standing to seek a declaratory judgment on the constitutionality of § 43.-25.

### Abstention

As an alternative to his challenge to Plaintiff's standing, Defendant has contended that this Court should abstain from ruling on the constitutional question by virtue of the *Younger* doctrine. *Younger v. Harris, supra.* The *Younger* doctrine, where appropriate, applies even though only declaratory relief, rather than an injunction against the enforcement of the state statute, is sought in the federal lawsuit. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Defendant would have the Court abstain and await the ruling of the Texas courts on the constitutionality of § 43.25.

As noted already, District Attorney Curtis and counsel for the Plaintiffs herein have advised the state court that they will defer further action in Robert Graham's criminal case until this Court has ruled on the present motion for summary judgment. Since the state officials and the state court have agreed to have the federal question heard first in federal court, the equitable basis for *Younger* abstention, which is based on considerations of comity and deference to state court adjudication, no longer is present. *See Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 479–481, 97 S.Ct. 1898, 1903–1904, 52 L.Ed.2d 513, 521–22 (1977).

Even in the absence of an agreement to litigate in this forum, the Court is not convinced that abstention would be proper in this case. Jay Battershell is not currently a party to any pending state court litigation concerning the constitutionality of § 43.25. Defendant argues that since Graham is employed by Battershell, the criminal proceed-

ing against Graham should be imputed to Battershell for *Younger* purposes. The Supreme Court, however, consistently has upheld the right of one not a party to state court proceedings to challenge the constitutionality of a state statute by seeking declaratory relief in federal court, even though another person may be able to raise the constitutional issue as a defense to the state's enforcement action. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Doran v. Salem Inn, Inc., supra.*

In support of his "imputation" theory, Defendant relies on dicta from *Allee v. Medrano,* 416 U.S. 802, 830–33, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) (concurring opinion by Chief Justice Burger), in which it was suggested that when members of a union are subjects of state court prosecution, the union as an entity as well as the individual members should be precluded from immediate federal declaratory or injunctive relief. The Chief Justice was of the view that to rule otherwise would permit individuals to circumvent *Younger* by presenting their First Amendment claims in federal court through an association of the same persons subject to state court proceedings. By the same type of reasoning, the court in *Gajon Bar & Grill, Inc. v. Kelly,* 508 F.2d 1317 (2d Cir. 1974), held that where a bar manager had been charged with violating an ordinance prohibiting topless dancing, the corporate owner of the bar was barred by *Younger* from challenging the ordinance on First Amendment grounds in federal court.

None of the cases cited by Defendant is apposite here. This Court is not confronted with a situation where an association or a corporate Plaintiff is being used as a vehicle to circumvent *Younger.* Jay Battershell is an individual person, and as an individual he seeks declaratory relief from the threat of prosecution and disruption of his business by the chilling effect of an allegedly unconstitutional statute. His individual constitutional rights should not have to await the outcome of a criminal prosecution

of someone else. In this Court's view, *Steffel* and *Doran* are controlling here, and the *Younger* doctrine does not stand as a bar to consideration of Plaintiff's constitutional challenge.

### *The Constitutionality of § 43.25*

Texas Penal Code § 43.25 [4] provides as follows:

"(a) A person commits an offense if, knowing the content of the material, he sells, commercially distributes, commercially exhibits, or possesses for sale, commercial distribution, or commercial exhibition any motion picture or photograph showing a person younger than 17 years of age observing on [sic] engaging in sexual conduct.

(b) It is an affirmative defense to prosecution under this section that the obscene material was possessed by a person having scientific, educational, governmental, or other similar justification.

(c) An offense under this section is a felony of the third degree."

Section 43.25 was hurriedly enacted by the Texas legislature in the Spring of 1977. On May 21 the section was passed by the House of Representatives and on May 27 by the Senate. It was approved on June 10 and made effective the same day because it was declared to be emergency legislation.

Plaintiff claims that § 43.25 violates the First Amendment because it is overbroad. A statutory enactment, though it be clear and precise as to the conduct proscribed, nonetheless must be struck down on overbreadth grounds if in its reach it forbids expression which is protected by the Constitution. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The crucial question in an overbreadth case is whether the legislation under attack sweeps within its ambit speech or conduct which is not subject to suppression. *Id.* If so, the statute must be declared unconstitutional on its face, regard-

---

4. H.B.No.1269, 1977 Vernon's Texas Session Law Service 1035.

less of the fact that the conduct of the particular person presenting the challenge could be regulated by a more narrow statute. *Doran v. Salem Inn, Inc., supra,* 422 U.S. at 933, 95 S.Ct. 2561.

In reaching this determination with regard to § 43.25, the Court does not take lightly the prospect of declaring invalid a statute duly enacted by the state's legislative body. As the Supreme Court has stated:

> "This Court has long recognized that a demonstrably overbroad statute or ordinance may deter the legitimate exercise of First Amendment rights. Nonetheless, when considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program. In accommodating these competing interests the Court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts . . . and its deterrent effect on legitimate expression is both real and substantial."

*Erznoznik v. City of Jacksonville, supra,* 422 U.S. at 216, 95 S.Ct. at 2276. The Court's task is made even more difficult in a case such as this, where the state through its criminal laws seeks to control what it views as a serious problem created by the exploitation of minors in the making of pornographic photographs and films. This is an important matter; accordingly, the Court must and does give strong consideration to the state's interest in enforcing the policy expressed in the statute, and the Court by no means deprecates the state's concern for minors or its attempt to protect them.

At the same time, it is the Court's duty closely to scrutinize any legislation which purports to limit or prohibit free speech or expressive conduct, whether the expression be by means of a book, magazine, photograph, newspaper, pamphlet, or motion picture. In this area, the Court must be vigi-

lant to safeguard legitimate First Amendment rights, even if to do so may in some cases be a distasteful task.

As already noted, the commercial sale or exhibition of motion pictures is a form of expression which is strictly protected by the First Amendment. *Joseph Burstyn, Inc. v. Wilson, supra; Interstate Circuit, Inc. v. Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968). Even when the subject matter of a film deals with human sexuality, the commercial use of the film cannot be made punishable unless the contents of the film are such as to render the entire work "obscene", as that term has been circumscribed by the guidelines and standards established by the Supreme Court. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In *Miller,* the Court emphasized the need for carefully-drawn legislation whenever a state seeks to restrict expressive conduct:

> "We acknowledge, however, the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. . . . As a result, we now confine the permissible scope of such regulations to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed."

*Id.,* at 23–4, 93 S.Ct. at 2614. The Court in *Miller* delineated a three-part test which must be met before a work may be deemed obscene. The test is:

> "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; . . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." [5]

---

5. In 1975, Texas amended the definitional section of its obscenity statutes in an effort to

comply with *Miller.* Texas Penal Code § 43.21 provides in part:

The Court further indicated in *Miller* that it is only the depiction of "hard core" sexual conduct which may constitutionally be prohibited. *Id.,* at 27, 93 S.Ct. 2607. See *Jenkins v. Georgia, supra* (the Supreme Court holding that the film "Carnal Knowledge" is not obscene under *Miller;* juries do not have "unbridled discretion" to determine what is patently offensive).

In light of the *Miller* requirements, it is this Court's opinion that Texas Penal Code § 43.25 plainly is overbroad. The statute makes it a felony[6] offense for a person commercially to possess, exhibit, distribute or sell "*any* motion picture or photograph showing a person younger than 17 years of age observing [or] engaging in sexual conduct." (emphasis added) The statute fails to include the most basic requirement—that to constitute an offense the photograph or motion picture must be obscene.[7] As a result, the statute would permit the suppression of a motion picture, and the imprisonment of a theater manager or owner, regardless of whether or not, taken as a whole, the work is obscene. Counsel for Plaintiff Battershell suggests in his brief, for example, that by failing to require that the picture be obscene, § 43.25 would prohibit the commercial exhibition of a major motion picture concerning the psychological effect on a teen-ager who happens inadvertently to view his parents engaged in sexual conduct. A ten-second sequence in such a film would render the exhibitor subject to felony prosecution, notwithstanding that the film as a whole did not appeal to a prurient interest, did not

depict sexual conduct in a patently offensive way, and did not lack serious literary, artistic, political, or scientific value.

In fact, the statute literally makes it unlawful to exhibit a movie which "shows" a person under 17 years of age "observing . . . sexual conduct" even if the conduct being observed is never itself depicted on the film. Such a film clearly would not be obscene.

The Court need not continue to cite possible applications of § 43.25 to protected forms of expression. It is apparent that the statute could be applied to a variety of works which, taken as a whole, very plainly would not be the type of "hard core" pornography referred to in the Supreme Court's opinion in *Miller.*

The Court does not believe, either, that § 43.25 could pass constitutional muster as written on the justification that it is a measure to protect the safety and welfare of minors, or to prevent their exploitation and abuse. If the statute were limited to prohibiting the depiction of minors actually engaging in sexual conduct, or even if the statute merely prohibited the observance of actual sexual conduct by minors, the Court would likely have no hesitation in declaring its constitutionality. *See Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). But the blanket prohibition in § 43.25 against exhibiting motion pictures just because they contain a scene in which a young person is shown observing sexual conduct, without any prerequisite that the film be obscene or that the minor's part in the film in any way involves sexual

"(1) 'Obscene' means having as a whole a dominant theme that:
(A) appeals to the prurient interest of the average person applying contemporary community standards;
(B) depicts or describes sexual conduct in a patently offensive way; and
(C) lacks serious literary, artistic, political, or scientific value.

* * * * * *

(6) 'Sexual conduct' means:
(A) any contact between any part of the genitals of one person and the mouth or anus of another person;
(B) any contact between the female sex organ and the male sex organ;

(C) any contact between a person's mouth or genitals and the anus or genitals of an animal or fowl; or
(D) patently offensive representations of masturbation or excretory functions."

6. Under Texas law, a third-degree felony is punishable by a prison term of not more than ten years or less than two years, and a fine of up to $5,000. Texas Penal Code § 12.34.

7. The statute does not require that the work be obscene even as to minors. *See Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

exploitation, renders the statute overbroad. In light of the total failure to require that the material proscribed by § 43.25 be obscene, the Court cannot avoid the conclusion that the statute clearly is overbroad, and that its deterrent effect on protected conduct is both real and substantial, especially considering the severe sanctions for violation of the statute. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 217, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975).

Defendant suggests that the deficiencies in § 43.25 could be circumvented because the term "obscene" as used in § 43.25 is defined in § 43.21(1), and that the two sections should be read together to insure compliance with *Miller* standards. However, Defendant apparently ignores the fact that the only reference to "obscene" material in § 43.25 is found in part (b) of the section, which sets forth an affirmative defense to prosecution under part (a). The term does not appear at all in part (a) which establishes the offense.[8] Moreover, the defense set forth in § 43.25(b) by its very terms applies only to *possession* of the prohibited material. The commercial exhibition, distribution, or sale of the material made unlawful by § 43.25(a) is not subject to the affirmative defense.

If by referring to "the obscene material" only in the affirmative defense section of the statute the Texas legislature intended to create a presumption that all material prohibited by § 43.25(a) is obscene, then the statute clearly is defective and invalid, for a motion picture or photograph cannot be presumed to be obscene. *See Miller v. California, supra.*

Still, before declaring § 43.25 unconstitutional, it remains for this Court to consider whether the statute is "readily subject" to a narrowing construction by the state courts which would render it constitutional. *Erznoznik v. City of Jacksonville, supra.* The only narrowing construction which suggests itself to the Court would be, as Defendant contends, to read into § 43.25(a) the require-

ment that to constitute an offense the material must be obscene under the terms of § 43.21(1). The state courts have not had to address the statute to date, and the state district court has consented to defer to this Court, but it is not inconceivable that if the Texas courts were faced with the question, they would insert such a requirement rather than strike down the statute in its entirety.

However, in *Erznoznik v. City of Jacksonville, supra,* the Supreme Court was faced with a facial overbreadth challenge to a city ordinance which made it a nuisance for any employee of a drive-in theater to exhibit any motion picture containing scenes of nudity if the picture were visible from a public street. In holding the ordinance unconstitutionally overbroad, the Supreme Court considered the possibility that the ordinance could be justified as an exercise of the police power to protect children, by construing it as limited to movies which are obscene as to minors. The Court rejected that narrowing construction because a rewriting of the ordinance would be necessary to reach that result. *Erznoznik, supra,* at 217, n. 14 and n. 15, 95 S.Ct. 2268.

This Court is now faced with a similar situation, though the statutory infringement on protected conduct may well be less egregious here than in *Erznoznik.* Nevertheless, the Court is of the opinion that the only narrowing construction reasonably available to the state courts would necessitate a rewriting of the statute, and that under the reasoning of *Erznoznik* the statute is not readily subject to a narrowing construction. The Court feels that the following passage from the Supreme Court's opinion in *Erznoznik* is appropriate here:

> "We hold only that the present [statute] does not satisfy the rigorous constitutional standards that apply when government attempts to regulate expression. When First Amendment freedoms are at stake we have repeatedly emphasized that precision of drafting and clarity of purpose

---

**8.** Nor does the indictment against Robert Graham allege that the material he is charged with selling is obscene. See Note 2, *supra.*

are essential. These prerequisites are absent here."

422 U.S. at 217–18, 95 S.Ct. at 2277. This Court concludes that Texas Penal Code § 43.25 does not comport with the First Amendment and must be declared unconstitutional.

■ The Court notes that this decision will not necessarily preclude the state courts from placing their own construction on § 43.25. A federal court's declaratory judgment of unconstitutionality does not have the disruptive effect on state regulation that would be created by a broad injunction against enforcement of the statute; in fact, the declaratory relief granted in this case cannot directly affect or interfere with the state's enforcement of the statute except with respect to Jay Battershell, the federal Plaintiff involved in this ruling. *See Doran v. Salem Inn, Inc., supra,* 422 U.S. at 931, 95 S.Ct. 2561.

The Court would add that this holding does not leave Texas without a means of dealing with the problem of child pornography, quite apart from enforcement of § 43.25. Other of the state's criminal obscenity statutes are addressed to the exploitation of minors in the creation of pornographic materials, and the state has the authority under those laws to prosecute persons who actually use minors in the production or dissemination of obscene materials or performances.[9]

The Court having determined that Texas Penal Code § 43.25 is unconstitutionally overbroad, it is accordingly

ORDERED, ADJUDGED, and DECREED that Plaintiff Jay Battershell's Motion for Summary Judgment be, and hereby is, GRANTED.

---

9. *See* Texas Penal Code § 43.23(a)(3) and § 43.24(b)(3).